IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| GESTURE TECHNOLOGY PARTNERS, LLC, <br><br> Plaintiff, <br> v. <br><br> APPLE INC., <br><br> Defendant. | CIVIL ACTION NO. 6:21-cv-00121 <br><br> ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Gesture Technology Partners, LLC ("GTP" or "Plaintiff") files this original complaint against Apple Inc. ("Apple") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### PARTIES

1. Gesture Technology Partners, LLC is a limited liability company filed under the laws of the State of Ohio, with its principal place of business at 2815 Joelle Drive, Toledo, Ohio 43617.

2. Defendant Apple is a company incorporated in California. Apple designs, manufactures, makes, uses, imports into the United States, sells, and/or offers for sale in the United States Apple smartphones and tablets. Apple's smartphones and tablets are marketed, used, offered for sale, and/or sold throughout the United States, including within this district.

## JURISDICTION AND VENUE

3.      GTP repeats and re-alleges the allegations in Paragraphs 1-2 as though fully set forth in their entirety.

4.      This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

6.      Apple is subject to this Court's specific and general personal jurisdiction due at least to Apple's substantial business in this forum, including (i) at least a portion of the infringements alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

7.      Specifically, Apple intends to and does business in Texas, directly or through intermediaries and offers its products or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Western District of Texas.

8.      Apple maintains a regular and established place of business in this District, including at 2901 S. Capital of Texas Highway, Austin, Texas 78746.  Apple may be served with process through its registered agent for service in Texas: CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

9.      Since 2010, Apple has maintained an engineering team in Austin that designs chips that "go into all the devices [Apple] sell[s]."  *See* The Statesman, *Apple dives deeper into Austin's talent pool*, Sept. 7, 2016, available at https://www.statesman.com/news/20160907/apple-dives-deeper-into-austins-talent-pool (last accessed Dec. 29, 2020).

10.       In 2018, Apple had 6,200 employees in Austin, which was the largest population of Apple employees outside of its headquarters in Cupertino, California.  *See* Apple, Inc., *Apple to build new campus in Austin and add jobs across the US*, Dec. 13, 2018, available at https://www.apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/ (last accessed Dec. 29, 2020).

11.       As of 2019, Apple had approximately 7,000 employees in Austin.  It has also broken ground on its new $1 billion, 3-million square-foot campus, which will have the capacity to house up to 15,000 employees.  *See* Apple, Inc., *Apple expands in Austin*, Nov. 20, 2019, available at  https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/  (last accessed Dec. 29, 2020).

## THE TECHNOLOGY

12.       GTP repeats and re-alleges the allegations in Paragraphs 1-11 as though fully set forth in their entirety.

13.       GTP was founded in 2013 by Dr. Timothy Pryor, the sole inventor of the five Asserted Patents.  He currently resides in Toledo, Ohio.  Dr. Pryor received a B.S. in Engineering Physics from Johns Hopkins University in 1962, where he was also a member of the Army Reserve Officer in Training (ROTC) program.  Upon graduation, he was commissioned as a Second Lieutenant in the United States Army.  Dr. Pryor continued his education, obtaining an M.S. in Physics from the University of Illinois (1964) and a Ph.D. in Mechanical Engineering from the University of Windsor (1972).

14.       Dr. Pryor rose to the rank of Captain in the U.S. Army before his honorable discharge in 1967.  Dr. Pryor served at the U.S. Army Aberdeen Proving Ground and in Italy,

3

commanding missile teams supporting the Italian armed forces on a NATO anti-aircraft missile site, charged with guarding nuclear warheads and providing technical assistance to NATO.

15.     Dr. Pryor is a named inventor on over 200 patents and patent applications.  For the past four decades, he has been a pioneer in laser sensing technology, motion sensing technology, machine vision technology and camera-based interactive technology.

16.     Since the 1970's, Dr. Pryor has founded and led three other operating companies: two small operating companies in the automotive parts inspection and robotics businesses, one company that developed new forms of vehicle instrument panel controls, and co-founded another company that utilized camera-based sensors for physical therapy.  Dr. Pryor is responsible for a significant amount of the research and development for the technologies at these companies.

17.     The patents-in-suit, U.S. Patent Nos. 8,194,924 (the "'924 patent"), 7,933,431 (the "'431 patent"), 8,878,949 (the "'949 patent"), and 8,553,079 (the "'079 patent") (collectively, the "Asserted Patents"), are generally directed to innovations in using mobile phone cameras to assist a user to interact with their smartphone, including, for example, but not limited to unlocking their phone, taking and using photos or videos, and providing other functions.

18.     Dr. Pryor conceived of the inventions embodied in the Asserted Patents  in the mid- to late-1990s, when he was working on a variety of different projects related to imaging and computer control.  Dr. Pryor describes the process as a brainstorm that led to several breakthrough moments, ultimately resulting in the Asserted Patents.

## DISCUSSIONS WITH APPLE

19.     Dr. Pryor and his patents are well-known to Apple.

4

20.     Indeed, Apple has purchased patents and technologies from Dr. Pryor in the past including his "multi-touch" patent portfolio in 2010.  Dr. Pryor later assisted Apple in asserting the multi-touch portfolio against HTC.

21.     After Dr. Pryor developed the technology embodied in the Asserted Patents, Dr. Pryor again approached Apple about acquiring or licensing rights to Asserted Patents.

22.     GTP initiated a licensing discussion with Apple in June 2016 providing Apple with the Asserted Patents and describing the patented technology.

23.     Apple responded to GTP in writing by letter dated December 5, 2016 and negotiations continued through March 27, 2017.

24.     As a result of the correspondence described above and other negotiations, Apple was aware of the details of the Asserted Patents and was aware that Apple needed a license to practice the inventions in the Asserted Patents.

25.     On information and belief, Apple did not take any steps to change their products or to inform its engineers and design team of the Asserted Patents to avoid infringing them.

## THE ACCUSED PRODUCTS

26.     GTP repeats and re-alleges the allegations in Paragraphs 1-25 as though fully set forth in their entirety.

27.     Apple infringed the asserted patents by making, using, selling, offering to sell, and importing its smartphones and tablets including, but not limited to, Apple's iPhone models 5C, 5S, 6, 6 Plus, 6S, 6S Plus, SE (1st), 7, 7 Plus, 8, 8 Plus, X, XS, XS Max, XR, 11, 11 Pro, 11 Pro Max, SE (2nd), 12, 12 Mini, 12 Pro, and 12 Pro Max and Apple's iPad models iPad Mini 3, Air 2, Mini 4, Pro (1st, 12.9 in.), iPad Pro (1st, 9.7 in.), iPad (5th generation), iPad Pro (2nd, 10.5/12.9 in.), iPad (6th generation), iPad Pro (3rd, 11/12.9 in.), iPad Air (3rd generation), iPad Mini (5th generation),

iPad (7th generation), iPad Pro (4th, 11/12.9 in.), iPad (8th generation), and iPad Air (4th generation), (collectively the "Accused Products").

## EXAMPLES OF APPLE'S MARKETING OF THE ACCUSED FEATURES

28.     The Accused Products have features including, but not limited to, at least the following:  Face ID, QR Scanner, Smart HDR, tracking autofocus, picture face recognition, selfie focus, autofocus area, optical image stabilization, portrait mode, switch control, and Animojis (the "Features").

29.     The Features drive the popularity and sales of the Accused Products.

30.     For example, Apple has marketed the Accused Products using Face ID to unlock the phone as a superior security feature, as described in the following screenshot from Apple's website:[1]



---

[1] Apple Inc., *About Face ID advanced technology*, available at
https://support.apple.com/en-us/HT208108 (last accessed November 12, 2020).

31.     Apple has marketed its Accused Products using Face ID to make payments through

Apple Pay, as described in the following screenshot from Apple's website:[2]



32.      Apple has marketed its Accused Products using functions in taking photos and videos, such as the Smart HDR feature in its front-facing camera, as described in the following screenshot from Apple's website:[3]



33.     Apple has marketed the Accused Products using convenience features, such as Attention Aware features, as described in the following screenshot from Apple's website[4]:



# About Attention Aware features on your iPhone X or iPad Pro

Learn how to turn Attention Aware features on or off on your iPhone X or later, or iPad Pro 11-inch or iPad Pro 12.9-inch.

## Turn Attention Aware features on or off

Even if you don't enroll in Face ID, the TrueDepth camera on iPhone X or later, or iPad Pro 11-inch or iPad Pro 12.9-inch intelligently activates to support attention aware features. For example,

- When you're looking at your device, your display will not dim until you stop looking at your device.
- If you're looking at your device, it will lower the volume sound of your alerts.

If you don't want to use these features, go to Settings > Face ID & Passcode and turn off Attention Aware Features.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 8,194,924**

34.     GTP repeats and re-alleges the allegations in Paragraphs 1-34 as though fully set forth in their entirety.

35.     GTP owns all substantial rights, interest, and title in and to the '924 patent, including the sole and exclusive right to prosecute this action and enforce the '924 patent against

---

[4] Apple, *About Attention Aware features on your iPhone X or iPad Pro*, available at https://support.apple.com/en-us/HT208245 (last accessed November 12, 2020).

infringers, and to collect damages for all relevant times. The United States Patent and Trademark Office duly issued the '924 patent on June 5, 2012. A copy of the '924 patent is attached as Exhibit A.

36.     The '924 patent is titled "Camera Based Sensing in Handheld, Mobile, Gaming or Other Devices." The '924 patent describes using a camera output such that the handheld device's computer performs a control function on the device, such as acquiring or taking images, reading things, determining data, transmitting data, printing data, and actuating a vehicle or function.

37.     The claims of the '924 patent are not directed to an abstract idea.

38.     Apple has directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '924 patent.

39.     Apple has infringed the '924 patent by making, using, selling, offering for sale, and importing the Accused Products.

40.     The Accused Products are handheld devices with a housing and a computer, including but not limited to one or more System-on-Chips.

41.     The Accused Products have at least one first camera oriented to view a user of the Accused Product. The first camera has an output when used.

42.     The Accused Products have at least one second camera oriented to view an object other than the user. The second camera has an output when used.

43.     The first and second cameras of the Accused Products have non-overlapping fields of view.

44.     The computer of the Accused Products is adapted to perform a control function, such as the control functions associated with the Features, based on an output of either the first camera or the second camera.

45.      Plaintiff has been damaged as a result of the infringing conduct by Apple alleged above.  Thus, Apple is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46.      Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '924 patent.

47.      Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the '924 patent.

48.      Apple had knowledge of the '924 patent at least as early as June 2016, when GTP contacted Apple in an attempt to license the Asserted Patents.

49.      Apple has also indirectly infringed one or more claims of the '924 patent by inducing others to directly infringe the '924 patent.  Apple has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '924 patent by using the Accused Products.  Apple took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '924 patent, including, for example, Claim 1 of the '924 patent.  Such steps by Apple included, among other things, advising or directing end-users and other third-parties to use the Accused Features in the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Apple performed these steps, which constitute induced infringement with the knowledge of the '924 patent and with the knowledge that the induced acts constitute infringement.  Apple was aware that the normal and customary use of the Accused Products by others would infringe the

'924 patent. Apple's direct infringement of the '924 patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 7,933,431

50.     GTP repeats and re-alleges the allegations in Paragraphs 1-49 as though fully set forth in their entirety.

51.     GTP owns all substantial rights, interest, and title in and to the '431 patent, including the sole and exclusive right to prosecute this action and enforce the '431 patent against infringers, and to collect damages for all relevant times. The United States Patent and Trademark Office duly issued the '431 patent on April 26, 2011. A copy of the '431 patent is attached as Exhibit B.

52.     The '431 patent is titled "Camera Based Sensing in Handheld, Mobile, Gaming, or Other Devices." The '431 patent describes a method for a user to control a handheld device using gestures that are observed by a sensor on the handheld device.

53.     Apple has directly infringed (literally or under the doctrine of equivalents) at least Claim 7 of the '431 patent. Apple has infringed the '431 patent by making, using, selling, offering to sell, and importing the Accused Products.

54.     The claims of the '431 patent are not directed to an abstract idea.

55.     The Accused Products are handheld computers.

56.     The Accused Products have a housing.

57.     The Accused Products have one or more cameras associated with their housing. The one or more cameras obtain images of objects using reflected light from the objects.

58.     A computer, including but not limited to at least one System on Chip, resides within the housing of the Accused Products.  The computer analyzes images obtained by the one or more images to determine information about a position or movement of the object.

59.     The Accused Products use information about the object to control a function of the Accused Products, such as the functions associated with the Features.

60.     Plaintiff has been damaged as a result of the infringing conduct by Apple alleged above.  Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

61.     Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '431 Patent.

62.     Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the '431 patent.

63.     Apple had knowledge of the '431 patent at least as early as June 2016.

64.     Apple has also indirectly infringed one or more claims of the '431 patent by inducing others to directly infringe the '431 patent.  Apple has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '431 patent by using the Accused Products.  Apple took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '431 patent, including, for example, Claim 7 of the '431 patent.  Such steps by Apple included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and

other third-parties to use the Accused Products in an infringing manner.  Apple performed these steps, which constitute induced infringement with the knowledge of the '431 patent and with the knowledge that the induced acts constitute infringement.  Apple was aware that the normal and customary use of the Accused Products by others would infringe the '431 patent.  Apple's direct and indirect infringement of the '431 patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,878,949

65.      GTP repeats and re-alleges the allegations in Paragraphs 1-64 as though fully set forth in their entirety.

66.      GTP owns all substantial rights, interest, and title in and to the '949 patent, including the sole and exclusive right to prosecute this action and enforce the '949 patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '949 patent on November 4, 2014.  A copy of the '949 patent is attached as Exhibit C.

67.      The '949 Patent is titled "Camera Based Interaction and Instruction."  The '949 patent describes a device that allows a user to control the device using gestures registered by the front-facing camera and an electro-optical sensor.

68.      The claims of the '949 patent are not directed to an abstract idea.

69.       Apple has directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '949 patent.  Apple infringed the '949 patent by making, using, selling, offering for sale, and importing the Accused Products.

70.      The Accused Products are portable devices.

71.    The Accused Products have a housing.  The housing has a forward-facing portion that includes an electro-optical sensor that has a field of view and a digital camera.

72.    Within the housing is a processing unit including, but not limited to, at least one System on Chip.  The processing unit is coupled to the electro-optical sensor.

73.    The processing unit in the Accused Products has been programmed to determine if a gesture has been performed in the electro-optical sensors field of view based on an output from the electro-optical sensor.

74.    The processing unit of the Accused Products controls the digital camera in response to the gesture performed.  Such gestures are used by the Features.

75.    Plaintiff has been damaged as a result of the infringing conduct by Apple alleged above.  Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

76.    Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '949 Patent.

77.    Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the '949 patent.

78.    Apple had knowledge of the '949 patent at least as early of June 2016.

79.    Apple has also indirectly infringed one or more claims of the '949 patent by inducing others to directly infringe the '949 patent.  Apple has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '949 patent by using the Accused Products.  Apple took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes

one or more claims of the '949 patent, including, for example, Claim 1 of the '949 patent.  Such steps by Apple included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products  in an infringing manner.  Apple performed these steps, which constitute induced infringement with the knowledge of the '949 patent and with the knowledge that the induced acts constitute infringement.  Apple was aware that the normal and customary use of the Accused Products by others would infringe the '949 patent.  Apple's direct and indirect infringement of the '949 patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 8,553,079

80.      GTP repeats and re-alleges the allegations in Paragraphs 1-79 as though fully set forth in their entirety.

81.      GTP owns all substantial rights, interest, and title in and to the '079 patent, including the sole and exclusive right to prosecute this action and enforce the '079 patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '079 patent on October 8, 2013.  A copy of the '079 patent is attached as Exhibit D.

82.      The '079 patent is titled "More Useful Man Machine Interfaces and Applications." The '079 patent describes methods and apparatuses related to determining gestures illuminated by a light source of a computer by using a camera housed in the computer.

83.      The claims of the '079 patent are not directed to an abstract idea.

84.     Apple has directly infringed (literally or under the doctrine of equivalents) at least Claim 11 of the '079 patent. Apple has infringed the '079 patent by making, using, selling, offering for sale, and importing the Accused Products.

85.     The Accused Products are computer apparatuses.

86.     The Accused Products contain a light source that will illuminate a human body part within a work volume.

87.     The Accused Products have one or more cameras. The one or more cameras have a fixed relation to the light source. The one or more cameras of the Accused Products are oriented to observe gestures performed by a human body part.

88.     The Accused Products have one or more processors including, but not limited to, one or more System on Chips, that have been programmed to determine a gesture performed based on output from the one or more cameras.

89.     Plaintiff has been damaged as a result of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

90.     Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '079 patent.

91.     Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the '079 patent.

92.     Apple had knowledge of the '079 patent at least as early as June 2016.

93.     Apple has also indirectly infringed one or more claims of the '079 patent by inducing others to directly infringe the '079 patent. Apple has induced end-users and other third-

parties to directly infringe (literally or under the doctrine of equivalents) the '079 patent by using the Accused Products.  Apple took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '079 patent, including, for example, Claim 11 of the '079 patent.  Such steps by Apple included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Apple performed these steps, which constitute induced infringement with the knowledge of the '079 patent and with the knowledge that the induced acts constitute infringement.  Apple was aware that the normal and customary use of the Accused Products by others would infringe the '079 patent.  Apple's inducement is ongoing.

94.      Apple's direct and indirect infringement of the '079 patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

GTP requests that the Court find in its favor and against Apple, and that the Court grant GTP the following relief:

a.      Judgment that one or more claims of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Apple or all others acting in concert therewith;

b.      Judgment that Apple accounts for and pays to GTP all damages to and costs incurred by GTP because of Apple's infringing activities and other conduct complained of herein;

c.      Judgment that Apple's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.      Pre-judgment and post-judgment interest on the damages caused by Apple's infringing activities and other conduct complained of herein;

e.      That this Court declare this an exceptional case and award GTP its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.      All other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 4, 2021                    Respectfully submitted,

By: /s/ Fred I. Williams
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
Jonathan L. Hardt
Texas State Bar No. 24039906
Chad Ennis
Texas State Bar No. 24045834
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner

Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Gesture Technology*
*Partners, LLC*