# EXHIBIT  1

Trials@uspto.gov
571-272-7822

Paper 10
Entered: November 29, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

APPLE, INC.,
Petitioner,

v.

GESTURE TECHNOLOGY PARTNERS, LLC,
Patent Owner.

IPR2021-00922
Patent 8,553,079 B2

Before JONI Y. CHANG, KRISTI L. R. SAWERT, and
BRENT M. DOUGAL, *Administrative Patent Judges.*

DOUGAL, *Administrative Patent Judge.*

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2021-00922
Patent 8,553,079 B2

## I.   INTRODUCTION

### A.   Background and Summary

Petitioner, Apple Inc., requests that we institute an *inter partes* review to challenge the patentability of claims 1–30 (the "challenged claims") of U.S. Patent 8,553,079 B2 (Ex. 1001, "the '079 patent"). Paper 1 ("Petition" or "Pet."). Patent Owner, Gesture Technology Partners, LLC, argues that Petitioner's request is deficient and should not be granted. Paper 8 ("Preliminary Response" or "Prelim. Resp.").

Applying the standard set forth in 35 U.S.C. § 314(a), which requires demonstration of a reasonable likelihood that Petitioner would prevail with respect to at least one challenged claim, we institute an *inter partes* review.[1]

### B.   Related Matters

The parties identify these related matters: *Gesture Technology Partners, LLC v. Huawei Device Co., Ltd.*, No. 2:21-cv-00040 (E.D. Tex.); *Gesture Technology Partners, LLC v. Samsung Electronics Co.*, No. 2:21-cv-00041 (E.D. Tex.); *Gesture Technology Partners, LLC v. Apple Inc.*, No. 6:21-cv-00121 (W.D. Tex.); *Gesture Technology Partners, LLC v. Lenovo Group Ltd.*, No. 6:21-cv-00122 (W.D. Tex.); and *Gesture Technology Partners, LLC v. LG Electronics, Inc.*, No. 6:21-cv-00123 (W.D. Tex.). Pet. 77; Paper 6, 1–2. Patent Owner identifies these related Board proceedings: IPR2021-00917; IPR2021-00920; and IPR2021-00923. Paper 6, 2.

### C.   The '079 Patent

The '079 patent relates to "[a] method for determining a gesture," such as a hand or finger gesture, using a camera and a light source, where

---

[1] Our findings and conclusions at this stage are preliminary, and thus, no final determinations are made.

IPR2021-00922
Patent 8,553,079 B2

the gesture serves as an input for a computer. Ex. 1001, Abstract, 1:54–57,
1:64–2:2. Figure 2, reproduced below, depicts an embodiment in which a
computer device (e.g., laptop) includes this method.



## FIG. 2

As illustrated in Figure 2, a laptop (138) may include camera locations (100,
101, 105, 106, 108, 109), a keyboard surface (102), a screen housing (107), a
light (122), light emitting diodes (LEDs) (210, 211), and a work volume area
(170) within which a user's movements are detected. *Id.* at 2:39–53. The
system can detect a user's finger alone or the user may employ external
objects such as a ring (208) to help detect and recognize gestures performed
in the work volume area (170). *Id.* at 2:54–3:8. The '079 patent describes
detecting point, pinch, and grip gestures using this configuration. *Id.* at 2:54–
61, 3:48–51.

3

IPR2021-00922
Patent 8,553,079 B2

### D. Illustrative Claim

Petitioner challenges claims 1–30 of the '079 patent. Claims 1, 11, and 21 are independent. Claim 1 is illustrative:

> 1. A computer implemented method comprising:
>
> > providing a light source adapted to direct illumination through a work volume above the light source;
> >
> > providing a camera oriented to observe a gesture performed in the work volume, the camera being fixed relative to the light source; and
> >
> > determining, using the camera, the gesture performed in the work volume and illuminated by the light source.

Ex. 1001, 13:2–9.

## II. ANALYSIS

### A. Summary of Issues

In the below analysis, we first address the grounds of unpatentability. We then address Patent Owner's jurisdiction arguments.

### B. Grounds of Unpatentability

Petitioner asserts the following grounds of unpatentability (Pet. 5), supported by the declaration of Dr. Benjamin B. Bederson (Ex. 1010):

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 2, 4–14, 17, 19, 21, 22, 24–28, 30 | 103(a)[2] | Numazaki,[3] Knowledge of a PHOSITA[4] |
| 3, 15, 23 | 103(a) | Numazaki, Numazaki '863[5] |

[2] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 285–88 (2011), revised 35 U.S.C. § 103 effective March 16, 2013. Because the challenged patent was filed before March 16, 2013, we refer to the pre-AIA versions.

[3] U.S. Patent 6,144,366, issued Nov. 7, 2000 ("Numazaki") (Ex. 1004).

[4] A person of ordinary skill in the art ("PHOSITA").

[5] U.S. Patent 5,900,863, issued May 4, 1999 ("Numazaki '863") (Ex. 1005).

IPR2021-00922
Patent 8,553,079 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 16, 29 | 103(a) | Numazaki, DeLuca[6] |
| 18 | 103(a) | Numazaki, DeLeeuw[7] |
| 20 | 103(a) | Numazaki, Maruno[8] |

### 1. Legal Standards for Unpatentability

Petitioner bears the burden to demonstrate unpatentability. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). At this preliminary stage, we determine whether the information presented in the Petition shows a reasonable likelihood that Petitioner would prevail in establishing that at least one of the challenged claims would have been unpatentable. *See* 35 U.S.C. § 314(a).

A claim is unpatentable as obvious under 35 U.S.C. § 103 if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting 35 U.S.C. § 103(a)). We resolve the question of obviousness based on underlying factual determinations, including: (1) the scope and content of the prior art; (2) any differences between the prior art and the claims; (3) the level of skill in the art; and (4) when in evidence, objective indicia of nonobviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

We apply these principles to the Petition's challenges.

---

[6] U.S. Patent 6,064,354, issued May 16, 2000 ("DeLuca") (Ex. 1006).
[7] U.S. Patent 6,088,018, issued July 11, 2000 ("DeLeeuw") (Ex. 1007).
[8] U.S. Patent 6,191,773 B1, issued Feb. 20, 2001 ("Maruno") (Ex. 1008).

IPR2021-00922
Patent 8,553,079 B2

### 2. Level of Ordinary Skill in the Art

Petitioner asserts that "[a] person having ordinary skill in the art ("PHOSITA") at the time of the '079 Patent would have had at least a bachelor's degree in electrical engineering or equivalent with at least one year of experience in the field of human computer interaction" and that "[a]dditional education or experience might substitute for the above requirements." Pet. 4 (citing Ex. 1010 ¶¶ 29–31). Patent Owner does not dispute Petitioner's level of ordinary skill in the art. Prelim. Resp. 5.

We are persuaded, on the present record, that Petitioner's declarant's statement is consistent with the problems and solutions in the '079 patent and prior art of record. We adopt this definition for the purposes of this Decision.

### 3. Claim Construction

In *inter partes* review, we construe claims using the same claim construction standard that would be used to construe the claims in a civil action under 35 U.S.C. § 282(b), including construing the claims in accordance with the ordinary and customary meaning of such claims as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent. 37 C.F.R. § 42.100(b) (2020).

Neither party proposes any claim constructions at this stage. Pet. 5–6; Prelim. Resp. 5. To the extent any term needs construction, we address the term in the arguments below. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("[W]e need only construe terms that are in controversy, and only to the extent necessary to resolve the controversy.") (internal quotation omitted).

IPR2021-00922
Patent 8,553,079 B2

### 4.   Obviousness over Numazaki and Knowledge of a PHOSITA

Petitioner argues that Numazaki in view of the knowledge of a person of ordinary skill in the art ("PHOSITA") would have rendered obvious claims 1, 2, 4–14, 17, 19, 21, 22, 24–28, and 30. Pet. 6–35. Patent Owner specifically contends that Numazaki does not disclose all the limitations of claims 1, 7, 11, 17, 21, and 27. Prelim. Resp. 5–24.

We first give an overview of the asserted prior art, Numazaki. This is followed by a discussion of Petitioner's positions and Patent Owner's arguments in response where we conclude that Petitioner has demonstrated a reasonable likelihood of prevailing with respect to at least one claim.

### a)   Numazaki

Numazaki "relates to a method and an apparatus for generating information input in which input information is extracted by obtaining a reflected light image of a target object." Ex. 1004, 1:8–11.

Figure 1, reproduced below, depicts a block diagram for an information input generation apparatus.



FIG.1

Figure 1 shows that an information input generation apparatus includes a lighting unit (101), a reflected light extraction unit (102), a feature data generation unit (103), and a timing signal generation unit (104). *Id.* at 10:23–

28. Numazaki describes emitting light from the light emitting unit (101) and that the intensity of the light varies in time according to a timing signal from the timing signal generation unit (104). *Id.* at 10:29–31. The light is directed onto a target object and light reflected from the target object is extracted by the reflected light extraction unit (102). *Id.* at 10:31–35. Numazaki teaches that the feature data generation unit (103) extracts feature data from the reflected light image. *Id.* at 10:57–61. Numazaki further teaches operating a computer based on information obtained from the feature data. *Id.* at 10:61–66.

Figure 74, reproduced below, illustrates an information input generation apparatus.

## FIG.74



Figure 74 shows a portable computer with an information input generation device. *Id.* at 50:25–29. The device includes a lighting unit (701) and a photo-detection sensor unit (702). *Id.* at 50:29–35. Numazaki teaches that "the operator operating the keyboard can make the pointing or gesture input by slightly raising and moving the index finger." *Id.* at 50:38–40.

   b)   *Claim 1*

Petitioner relies on Numazaki in view of the knowledge of a person of ordinary skill in the art ("PHOSITA") for teaching or suggesting all of the

IPR2021-00922
Patent 8,553,079 B2

elements of claim 1. Pet. 10–14. For example, Petitioner relies on the portable computer with an information input generation device of Figure 74 with its lighting unit (701) and photo-detection sensor unit (702) for the providing a computer, light source, and camera, method steps of claim 1. *Id.* at 10–13.

Petitioner further argues that the determining step is taught by Numazaki, where the lighting and photo-detection sensor units are used to determine a hand gesture in the area above the laptop. *Id.* at 12–13 (citing Ex. 1004, 50:30–43).

Numazaki only provides some details about the photo-detection sensor unit. *See generally* Ex. 1004, 50:25–54:6. However, Petitioner relies on Numazaki's teaching that "light and camera arrangement" of Figure 2 "is incorporated into the eighth embodiment" for more details about the photo-detection sensor unit. Pet. 13–14; *see also id.* at 9 (citing Ex. 1010 ¶¶ 42–43) (discussing what a PHOSITA would have understood was incorporated into the eighth embodiment). Petitioner describes Numazaki as teaching a system where two images are obtained of the target object by two different cameras, one with the lighting unit on and one with it off. *Id.* at 14 (citing Ex. 1007, 11:20–39). The images are compared to obtain certain information. *Id.* (citing Ex. 1007, 11:43–51). Petitioner concludes that the obtained "information is then used by feature data generation unit 103 to determine gestures, pointing, etc. of the target object that may be converted into commands executed by a computer" and that this all reads on the determining step of claim 1. *Id.* (citing Ex. 1007, 10:57–66).

Patent Owner argues that Numazaki does not teach aspects of the providing a camera and determining a gesture steps of claim 1. Prelim. Resp. 6–8. We address each argument in turn below.

IPR2021-00922
Patent 8,553,079 B2

### (1) Providing a camera

Claim 1 requires "providing a camera oriented to observe a gesture performed in the work volume, the camera being fixed relative to the light source." Ex. 1001, 13:5–7. As noted above, Petitioner relies on Numazaki's portable computer with an information input generation device of Figure 74 with its photo-detection sensor unit (702) for the providing a camera method step of claim 1. Pet. 12–13. We determine that Petitioner's showing is sufficient at this stage.

Patent Owner argues that "Numazaki does not teach or suggest *one camera* oriented to observe a gesture performed in the work volume" (Prelim. Resp. 6 (emphasis added)), but then immediately thereafter explains why this understanding of the claim (that only one camera is required) appears to be incorrect (*id.* (discussing the meaning of "comprising" when used in claims)). Patent Owner concludes that claim 1 "uses the [open-ended] transitional phrase 'comprising,' so the term 'a camera' means one or more cameras." *Id.*

Based on the current record, we agree with Patent Owner that the claim is not limited to only a single camera. Rather, "a camera" means one or more cameras. Thus, we determine that one or both of Numazaki's cameras read on the claimed "providing a camera" as outlined in the Petition. *See* Pet. 13–14.

Patent Owner further argues that "[t]he Petition concedes Numazaki requires <u>two</u> photo-detection units [i.e. cameras]. *See* Pet., p. 14. There is no teaching or suggestion of one or more cameras oriented to observe a gesture performed in the work volume." Prelim. Resp. 7. However, again it is unclear on this record why Numazaki's two cameras are not "one *or more* cameras" or why this teaching of Numazaki does not read on the claim.

10

IPR2021-00922
Patent 8,553,079 B2

Further, as can be seen in Numazaki's Figure 74, reproduced below, it is unclear why a PHOSITA would not understand the cameras at the photo-detection sensor unit (702) as oriented to observe a [hand] gesture performed in the work volume represented by the dotted circle.

### FIG.74



Figure 74 shows a portable computer with an information input generation device. Ex. 1004, 50:25–29.

For the above reasons, Patent Owner's arguments do not undermine the showing by Petitioner that Numazaki teaches all of the aspects of the providing a camera claim element for purposes of this Decision.

(2) *Determining the Gesture*

Claim 1 requires "determining, using the camera, the gesture performed in the work volume and illuminated by the light source." Ex. 1001, 13:8–9. As noted above, Petitioner relies on Numazaki to teach this step, where Numazaki's lighting and photo-detection sensor units are used to determine a hand gesture in the area above the laptop. Pet. 12–13 (citing Ex. 1004, 50:30–43). Petitioner further relies on Numazaki's teaching that "light and camera arrangement" of Figure 2 "is incorporated into the eighth embodiment" for more details about the photo-detection sensor unit. *Id.* at

IPR2021-00922
Patent 8,553,079 B2

13–14; *see also id.* at 9 (citing Ex. 1010 ¶¶ 42–43). We determine that Petitioner's showing is sufficient at this stage.

Patent Owner continues the above line of argument, arguing that "Numazaki does not teach or suggest 'determining, using the camera, the gesture performed in the work volume and illuminated by the light source,'" because "Numazaki requires two photo-detection units [i.e. cameras] to perform an analysis." Prelim. Resp. 7. As Patent Owner acknowledges that "'a camera' means one or more cameras," it is again unclear why Numazaki's two cameras are insufficient to read on the claim.

Patent Owner also argues that "Numazaki does not teach or suggest [the determining step] . . . absent the other hardware that Numazaki identifies as necessary, such as the image-subtraction circuitry and associated timing circuitry." *Id.* at 8.

The claimed phrase "determining, using the camera" does require that one or more cameras be involved in the determining step. However, it does not, at least on this record, prohibit other hardware from being involved. For example, the claim does not say "determining, using only the camera." Thus, the fact that "Numazaki identifies as necessary . . . the image-subtraction circuitry and associated timing circuitry" does not prevent Numazaki from teaching or suggesting the limitations of "open-ended" claim 1. *Id.* at 7, 8.

Patent Owner then argues that "Numazaki teaches away because it requires that one of the photo-detection units capture with lighting unit 101 off (Ex. 1004, 11:30-32, Fig. 2), which is contrary to the claim, which requires 'direct illumination.'" *Id.* at 8 (emphasis omitted).

However, the claim does not require that the gesture remain permanently illuminated, but rather requires "determining, using the camera, the gesture performed in the work volume and illuminated by the light

12

IPR2021-00922
Patent 8,553,079 B2

source." Ex. 1001, 13:8–9. Numazaki teaches, as stated by Patent Owner, that "[t]he first photo-detection unit 109 requires that a lighting unit 101 emit light during detection" of the gesture. Prelim. Resp. 7 (citing Ex. 1004, 11:26–30, Fig. 2); *see also* Pet. 14. At this stage, we determine that this is all that the claim appears to require.

The fact that Numazaki also teaches "the second photo-detection unit 110 detects [the gesture] while lighting unit 101 is not active" is not excluded by the language of the claim. Further, the fact that Numazaki compares both images in determining the gesture does also not appear to be excluded by the claim. The claim merely requires that the determining be made "using the camera," that the gesture [be] performed in the work volume" and that the gesture be "illuminated by the light source" at some point in time.

For the above reasons, Patent Owner's arguments do not undermine the showing by Petitioner that Numazaki teaches all of the aspects of the determining a gesture claim element for purposes of this Decision. For all of these reasons, we determine that the Petition has established a reasonable likelihood of success with respect to claim 1.

c)   *Claims 11 and 21*

Independent claim 11 is directed to a computer apparatus and is very similar to method claim 1. *Compare* Ex. 1001, 13:31–39 *with id.* at 13:1–9. Independent claim 21 is directed to a computer implemented method and is very similar to method claim 1. *Compare id.* 14:14–22 *with id.* at 13:1–9. As such, the Petition relies on the essentially the same teachings of Numazaki discussed above with respect to claim 1 for the features of claims 11 and 21, which we agree with for purposes of this Decision for the reasons explained above. *See* Pet. 28–30, 33.

IPR2021-00922
Patent 8,553,079 B2

Similarly, Patent Owner argues that the Petition fails to teach or suggest the claim elements of claims 11 and 21 "for the same reason[s] above with respect to claim [1]." Prelim. Resp. 13, 16, 17. Patent Owner then reiterates some of the same arguments discussed above, highlighting that the claimed "camera is one or more cameras," that Numazaki identifies additional hardware, and that the claimed work volume is illuminated. *Id.* at 13–14. Patent Owner does not provide any additional argument other than what has already been addressed with respect to claim 1 above.

Thus, we determine that the Petition has established a reasonable likelihood of success with respect to claims 11 and 21.

> *d)   Claims 7, 17, and 27*

Claims 7, 17, and 27 depend from claims 1, 11, and 21, respectively and are very similar in scope:

> 7. . . . providing a target positioned on a user that is viewable in the work volume.

> 17. . . . including a target that is viewable by the camera when in the work volume.

> 27. . . . providing a target positioned on the user that is viewable by the camera.

Ex. 1001, 13:21–23, 14:5–7, 14:35–37.

Petitioner argues[9] that Numazaki teaches using a hand as a target object with the work volume. Pet. 22–23 (citing Ex. 1004, 10:57–66, 50:35–37, Figs. 74, 77). Petitioner also argues that Numazaki recognizes "that it was known to paint a fingertip or to wear a ring in a particular color to improve detection." *Id.* at 23 (citing Ex. 1004, 3:4–11). Petitioner argues that

---

[9] Petitioner relies on the same positions laid out with respect to claim 7 to show how the prior art teaches or suggests claims 17 and 27. *See* Pet. 33, 34.

IPR2021-00922
Patent 8,553,079 B2

in view of these teachings in Numazaki, "[a] PHOSITA would have understood . . . that the Fig. 74 arrangement described in the eighth embodiment [of Numazaki] is particularly well suited to a ring or other small target mounted on a user's finger." *Id.* (citing Ex. 1010 ¶¶ 48–49).

Petitioner acknowledges, however, that Numazaki "cautions that requiring users to wear or mount some external component may negatively impact the user's convenience and may bring with it durability issues." *Id.* (citing Ex. 1004, 3:32–38). Petitioner relies on the testimony of its declarant to support its position that "users would accept" the tradeoff "of improved accuracy in exchange for the minor inconvenience of wearing a small ring or other hand-based target when using gesture recognition while typing." *Id.* (citing 1010 ¶¶ 48–49). Further, Petitioner argues that "the durability concerns are implicated by a ring target, and many adults wear rings routinely while typing with no ill effect, which suggests that such a tradeoff would be acceptable to many users." *Id.* at 23–24 (citing 1010 ¶¶ 48–49).

Patent Owner argues[10] that the portions of Numazaki that Petitioner discusses, identifying the user's inconvenience and durability issues (Ex. 1004, 3:32–38), teach away from using a ring as a target. Prelim. Resp. 11 ("Numazaki explicitly criticizes, discredits, and discourages investigation into the use of targets (i.e., Numazaki's markers or elements)). Patent Owner further argues that "a P[H]OSITA would be led in a path (i.e., an anti-target path) that is divergent from the path in claim 7." *Id.*

At this stage, Patent Owner's statement about the actions of a PHOSITA amount to unsupported attorney argument. Further, Patent Owner

---

[10] Patent Owner reiterates the main points made with respect to claim 7 to argue over claims 17 and 27. *See* Prelim. Resp. 15–16, 18–19.

IPR2021-00922
Patent 8,553,079 B2

does not address Petitioner's evidence that a PHOSITA would accept the tradeoff of less durability for improved accuracy to overcome the potential teaching away in Numazaki.

For these reasons, we determine that the Petition has established a reasonable likelihood of success with respect to claims 7, 17, and 27.

> e)  *Claims 2, 4–6, 8–10, 12–14, 19, 22, 24–26, 28, 30*

Petitioner argues that Numazaki in view of the knowledge of a PHOSITA would have rendered obvious dependent claims 2, 4–6, 8–10, 12–14, 19, 22, 24–26, 28, and 30. Pet. 14–21, 24–28, 30–35. Patent Owner does not separately contest Petitioner's assertions regarding these claims at this stage. *See generally* Prelim. Resp. We have reviewed Petitioner's assertions and the supporting evidence, and determine that Petitioner has established a reasonable likelihood of prevailing with respect to claims 2, 4–6, 8–10, 12–14, 19, 22, 24–26, 28, and 30.

> 5.  *Obviousness over Numazaki and Numazaki '863, Numazaki and DeLuca, Numazaki and DeLeeuw, and Numazaki and Maruno*

Petitioner argues that the combination of Numazaki and Numazaki '863 would have rendered obvious dependent claims 3, 15, and 23. Pet. 35–42. Petitioner argues that the combination of Numazaki and DeLuca would have rendered obvious dependent claims 16 and 29. *Id.* at 42–49. Petitioner argues that the combination of Numazaki and DeLeeuw would have rendered obvious dependent claim 18. *Id.* at 49–55. Petitioner argues that the combination of Numazaki and Maruno would have rendered obvious dependent claim 20. *Id.* at 55–68. Patent Owner does not separately address these grounds. *See generally* Prelim. Resp.

We have reviewed Petitioner's assertions with respect to these claims and the supporting evidence, and determine that Petitioner has established a

IPR2021-00922
Patent 8,553,079 B2

reasonable likelihood of prevailing with respect to claims 3, 15, 16, 18, 20, 23, and 29.

### C. *Jurisdiction over Expired Patents*

Patent Owner argues that the Board does not have jurisdiction over expired patents. Prelim. Resp. 21. Patent Owner argues:

> 35 U.S.C. § 2(a)(1) states that the United States Patent and Trademark Office "shall be responsible for the granting and issuing of patents. . . ." The Patent Trial Appeal Board is required to "conduct inter partes reviews and post-grant reviews pursuant to chapters 31 and 32." 35 U.S.C. § 6(b)(4). The burden of proof required to find a claim unpatentable is the preponderance of evidence, which is a lower burden of proof than the clear and convincing standard applied in district courts. 35 U.S.C. § 316(a)(9) requires that the Director prescribe regulations "setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection(d)." This is due, in part, to the fact that there is a lower burden of proof required to invalidate a patent before the Board.

*Id.* at 21–22.

Patent Owner appears to be arguing that, because 35 U.S.C. § 316(a)(9) requires the Director to establish procedures to allow for amendments of patents and that as expired patents cannot be amended, we do not have jurisdiction over expired patents in *inter partes* review. *Id.* Patent Owner concludes that as "[t]he '079 Patent has expired, . . . the opportunity to amend the '079 Patent is not available to Patent Owner" and therefore "determinations regarding the validity of this expired patent should be reserved for Article III courts under the clear and convincing standard." *Id.* at 22.

*Inter partes* review of patents, whether expired or not, fits within the USPTO's mandate "for the granting and issuing of patents" (35 U.S.C. § 2(a)(1)), for as the Supreme Court has stated, "[i]nter partes review is 'a

IPR2021-00922
Patent 8,553,079 B2

second look at an earlier administrative grant of a patent'" (*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016)). Our rules have also made clear *inter partes* review covers expired patents. 37 C.F.R. 42.100(b) (2012); *see also, e.g.*, 83 FR 51341 (Oct. 11, 2018) (Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board)[11] ("The claim construction standard adopted in this final rule also is consistent with the same standard that the Office has applied in interpreting claims of expired patents and soon-to-be expired patents. *See, e.g., Wasica Fin. GmbH* v. *Cont'l Auto. Sys., Inc.,* 853 F.3d 1272, 1279 (Fed. Cir. 2017) (noting that "[t]he Board construes claims of an expired patent in accordance with *Phillips* . . . [and] [u]nder that standard, words of a claim are generally given their ordinary and customary meaning").").

Further, the statutes governing *inter partes* review do not limit them to non-expired patents. For example, 35 U.S.C. § 311(b), which sets forth the scope of *inter partes* review merely refers to patents, with no mention of the expiration date. Further, 35 U.S.C. § 311(c) entitled "Filing Deadline" makes no mention of the expiration date of the patent. Elsewhere, 35 U.S.C. § 315 does limit the filing of IPRs based on civil actions and the serving of complaints, but again makes no mention of the expiration date of the patent. Patent Owner does not identify any statute that expressly limits *inter partes* review to non-expired patents.

Patent Owner fails to adequately explain why the requirement to establish procedures to allow for amendments to a patent means that expired

---

[11] Available at https://www.federalregister.gov/d/2018-22006/p-13.

IPR2021-00922
Patent 8,553,079 B2

patents are not subject to *inter partes* review. For example, the statute does not mandate that amendments to the patent be allowed in all cases.

For all of these reasons, we do not agree that the Board lacks jurisdiction over expired patents.

## III. CONCLUSION

For the foregoing reasons, we have determined that there is a reasonable likelihood that the Petitioner would prevail with respect to at least one of the claims challenged in the Petition. We therefore institute trial as to all challenged claims on all grounds stated in the Petition.

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that, *inter partes* review of claims 1–30 of U.S. Patent 8,553,079 B2 is instituted on all grounds in the Petition;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial will commence on the entry date of this decision.

IPR2021-00922
Patent 8,553,079 B2

FOR PETITIONER:
Adam P. Seitz
Paul R. Hart
ERISE IP, P.A.
adam.seitz@eriseip.com
paul.hart@eriseip.com

FOR PATENT OWNER:
Todd E. Landis
John Wittenzellner
WILLIAMS SIMONS & LANDIS PLLC
tlandis@wsltrial.com
johnw@wsltrial.com