## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **GESTURE TECHNOLOGY PARTNERS, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **6:21-CV-00121-ADA** |
| **-vs-** | § | |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Apple's ("Defendant" or "Apple") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California. ECF No. 21. Plaintiff Gesture Technology Partners, LLC ("Plaintiff" or "Gesture") filed its response (ECF No. 34) and Apple its reply (ECF No. 37). After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Apple's motion.

## I.     BACKGROUND

Plaintiff Gesture, an Ohio Corporation headquartered in Toledo, Ohio, filed suit on February 4, 2021. *See* ECF No. 1. Gesture accuses a variety of Apple iPhones and iPads (the "accused products") of infringing U.S. Patent Nos. 8,194,924 ("the '924 Patent"), 7,933,431 ("the '431 Patent"), 8,878,949 ("the '949 Patent"), and 8,553,079 ("the '079 Patent") (collectively, the "Asserted Patents"). *See generally, id.* The Asserted Patents relate to using cameras and gestures detected by the cameras or other sensors to control functions in the device for different applications. *Id.* The complaint accused several Apple applications in the Accused Products, including Face ID, QR Scanner, Smart HDR, tracking autofocus, picture face

1

recognition, selfie focus, autofocus area, optical image stabilization, portrait mode, switch control, and Animojis. *Id.* Apple has moved to transfer venues from the Western District of Texas (the "WDTX") to the Northern District of California (the "NDCA"). *See generally* ECF No. 21.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*

*AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to demonstrate that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.    DISCUSSION

**A.  Gesture could have brought this case in the Northern District of California.**

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Apple asserts that this case could have been brought in the NDCA because Apple maintains its headquarters in Cupertino, California. ECF No. 21 at 6. Gesture does not dispute this assertion. *See generally*, ECF No. 34. This Court finds that venue would have been proper in the NDCA had Gesture originally filed this case there. Thus, the Court proceeds with its analysis of the public and private interest factors to determine if the NDCA is clearly more convenient than the WDTX.

**B.  The Private Interest Factors**

> ***1.   The Relative Ease of Access of Sources of Proof***

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.,* No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax,* 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.,* 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Apple maintains that this factor heavily favors transfer because the "*relevant* documents and information are in California." ECF. No. 21 at 8. Apple concedes that there may be Apple documents located in the WDTX, however, it argues that none of those documents are relevant

to this suit. *Id*. To give credence to this conclusion, Apple points to potentially relevant Apple personnel confirmations that the relevant documents are housed in Apple's office in Cupertino. *Id*. Furthermore, Apple contends that the majority of the research, design, development, source code, and generation of documents related to the accused products took place in the NDCA. *Id*. Apple also maintains that all the relevant financial and marketing documents are in or around the NDCA. *Id*.

Gesture argues that Apple has not met its burden and that it failed "to identify with specificity that any hard copies of documents are located in NDCA." ECF No. 34 at 4. Gesture further contends that Apple made no showing concerning the location of the "relevant source code" and Apple admits that some of the key documents were generated outside the NDCA. *Id*. Gesture also asserts that Apple employees with the appropriate credentials can access Apple documents from anywhere, including Texas. *Id*. Furthermore, Gesture argues that Apple's Austin campus is instrumental in the development of the accused products as was demonstrated by Johnny Srouki's 2016 statement that Apple's Austin team is "Apple's biggest research and development group outside of its Cupertino, Calif. Headquarters." *Id*. at 5. Additionally, Gesture points to similar statements made by Mr. Srouki that Apple's Austin team "plays a critical and integral role—they are designing chips that go into all the devices [Apple] sell[s]. *Id*. at 5–6. In a last-dtitch effort to demonstrate Apple's relevant operations in the WDTX, Gesture states that Apple "currently lists 35 job openings in Austin for work relevant to its camera and video technology." *Id*. at 6.

This factor favors transfer as Apple has identified a specific group of relevant documents and source code that are mostly located in NDCA. ECF No. 21 at 8. The relevant inquiry,

contrary to Gestures point, is whether the bulk of the evidence/documents are stored in the transferee district. The Court will give no weight to Gesture's argument that the relevant documents are easily accessible by employees with the appropriate credentials outside the space in which they are located. Similarly, Gesture's contention that some of the relevant documents were "not generated only in NDCA" is misplaced. "The fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer." *Juniper Networks*, 14 F.4th 1313, 1321. The Court is not convinced by Gesture's argument that the statements by Mr. Srouki bear any relevance to this analysis. The size of Apple's Austin campus, job openings, and "chip" development are not factors which, by themselves, demonstrate that potentially relevant employee witnesses, or physical documents for that matter, are located in the WDTX. At best these statements yield speculation as to whether relevant documents are located here. Furthermore, job listings by Apple could equally point to the opposite conclusion, that Apple is in need of these types of employees because the Austin office currently lacks them. Thus, the Court finds that this factor favors transfer.

### 2.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at \*4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No.

6:18-cv-00372, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316); see also *In re Juniper*, 14 F.4th 1313, 1316 (Fed. Cir. 2021) ("the private factors are . . . (2) the availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order . . .") (emphasis added).

Apple maintains that this factor favors transfer. Apple's sole argument for this factor lies in that Apple is unaware of any potential third-party witnesses that would be within the subpoena power of the WDTX. ECF No. 21 at 9. Gesture, however, contends that Apple failed to identify any third-party witnesses, and that this factor is neutral for that reason. ECF No. 34 at 6. Because no witnesses have been identified by either party in both the WDTX and the NDCA, this factor is neutral.

### 3.  *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and

work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). In essence, the Federal Circuit has found that time away from an individual's home is a more important metric than distance. *Id.*

Apple maintains that this factor strongly favors transfer. Apple has noted "at least ten likely Apple witnesses who are based in NDCA, with none in Texas." ECF No. 21 at 9. Apple says that because the products were developed in NDCA, that it would make the most sense for the witnesses to also have been located there as the researchers and developers are in Cupertino. *Id*. The comparison in travel to each district is also significant from Cupertino and either WDTX or NDCA. *Id*. Apple provides that its "witnesses are all a short car ride from the courthouses in NDCA" but would be "more than 1,500 miles and a lengthy plane ride from Waco." *Id*. Apple states it is unaware of any likely Apple witnesses in the WDTX as the employees who work there are not the engineers that created the product. *Id*. at 11. Apple also highlights the fact that Gesture has one employee, Timothy Pryor, and that he is not located in either district as he is in Ohio. *Id*. at 10.

Gesture, however, argues that this factor does not favor transfer. Gesture's argument is based on allegations that Apple's witnesses are from a biased selection. ECF No. 34 at 7. Gesture relies heavily on the declaration of Mr. Mark Rollins and that he listed himself as a witness when he likely does not have relevant knowledge and likely will not testify at trial. *Id*. at 8. Gesture references the Rollins Declaration to confirm that Mr. Rollins "did not speak with anyone in Texas to see if they had any information relevant to the case." *Id*. at 7. Gesture also points out that Apple "does not deny that there are potential witnesses in Texas" and that it "fail[s] to deny the presence of operations, marketing, and finance personnel relevant in Texas." *Id*. at 9–10.

Gesture refers to Apple's witnesses as "may be" witnesses and contends that it is likely those witnesses will not actually testify at trial, and therefore, should not be given too much weight in deciding this factor. *Id.* at 7–8.

This Court has recently addressed the credibility of Mr. Rollins's declarations. Taking those considerations into account, the Court assesses little weight to Apple's proposed witnesses. As has been explained repeatedly, it is improper for movants to seek transfer but fail to provide sufficient discovery or conduct thorough investigations as to sources of proof and witnesses within the transferor forum. The Court finds that, given these credibility considerations, the WDTX and NDCA each likely have relevant witnesses, though the NDCA likely has more. Gesture's proposed witnesses, including the sole inventor and its representative, along with the prosecution attorney for the Asserted Patents, do not tip the scales for this factor either. For these reasons, this factor, at most, only slightly favors transfer.

### 4. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, … pertaining to the same underlying technology and accusing similar services, . . . the Federal

Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Apple maintains that this factor is either neutral or slightly favors transfer. Here, Apple raises that Gesture has filed two other lawsuits pertaining to the same patents within the WDTX. ECF No. 21 at 12. Additionally, Apple provides that Gesture has another two lawsuits in the EDTX, which Apple argues as proof that Gesture has no issue litigating in multiple districts simultaneously. *Id.* Gesture, however, contends that Apple ignored the other pending case before the Court. ECF No. 37 at 5. Gesture argues that weight should not be given to the pending WDTX case because it is not certain that the case will remain in the WDTX. *Id.*

The Court gives no weight to the other pending litigation, as that case was the subject of venue concerns. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017). In fact, the defendants in the co-pending litigation filed their motion to dismiss before Apple filed this Motion, putting the Court on notice of the potential venue issues. Ultimately, the Court granted the defendants motion to dismiss for improper venue, mooting any benefit from the parallel litigation. *See Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*, No. W-21-CV-00122-ADA, 2021 WL 6205789, at *4 (W.D. Tex. Dec. 29, 2021). This factor is therefore neutral.

### C. The Public Interest Factors

#### 1. *The Administrative Difficulties Flowing from Court Congestion*

This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer

and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id*.

Apple originally argued that this factor favors transfer because the WDTX, compared to the transferee forum, has considerably more patent cases on its docket and is slower to dismiss. *See generally* ECF No. 21 at 4. This argument, though creative, is not directly aimed at the appropriate inquiry. The test is not concerned with the speed of dismissal but rather the "speed with which a case can come to *trial* and be *resolved." In re Genentech, Inc.*, 566 F.3d at 1347.

Gesture argues that the time-to-trial in the WDTX is "more than 90 days faster" than the time-to-trial in the NDCA. ECF. No. 34 at 13. Furthermore, Gesture shows that the NDCA's median time to dismissal is shorter than WDTX by a mere 17 days since 2000. Gesture argues that such a broad date range cannot be instructive on the current court congestion differences between the two venues. *Id*. Apple offers no statistical counter to Gesture's time to trial data. Instead, it relies on the Federal Circuit's findings that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper Networks*, 14 F.4th at 1322.

Given the statistics provided in Gesture's briefing and lack thereof from Apple, the Court finds that this case would likely reach trial faster in this forum compared to the transferee forum. Yet, the Court gives this factor less weight as it is "the most speculative." *In re Genentech*, 566 F.3d at 1347. Thus, this factor weighs slightly against transfer.

### 2.   *The Local Interest in Having Localized Interests Decided at Home*

Courts must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and

the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence. *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022).

Apple maintains that this factor strongly favors transfer for three reasons: "(1) Apple's work on the research, design, development, and operation of the accused features primarily takes place there; (2) Apple's headquarters are located there; and, (3) all of Apple's likely witnesses are based there. ECF No. 21 at 14 (citing *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *4 (W.D. Tex. Oct. 11, 2017), *report and recommendation adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018). Apple posits that although Apple has a presence in Austin, the likely relevant witnesses are in the NDCA as that is where the accused products were developed and where Apple is headquartered. *Id*. Apple also raises that Gesture's only apparent connection to the WDTX is its other pending cases. *Id.*

Gesture, however, suggests that the WDTX is the better forum for litigation, and Apple has ample connection because its "second-largest campus" is in Austin. ECF No. 34 at 13. Gesture's main argument lies in that quite a bit of Austin taxpayers' money goes to the Apple campus located there, and therefore the WDTX has an interest in deciding the case locally. *Id.*

Gesture also does not counter Apple's argument by asserting that it has sufficient connections with the forum.

Apple's Austin campus, though growing, does not outweigh its headquarters in the NDCA. Moreover, this factor focuses on the events giving rise to the suit, instead of where a party maintains a footprint. Thus, this factor favors transfer.

### 3. *The Familiarity of the Forum with the Law that will Govern the Case*

The parties, and Court, agree that this factor is neutral.

### 4. *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

The parties, and Court, agree that this factor is neutral.

## IV.   CONCLUSION

Having reviewed all the public and private interest factors, the Court finds that Apple has met its burden to show that the NDCA is clearly more convenient. Defendant Apple's Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (ECF No. 21) is hereby **GRANTED**. The Clerk of the Court shall transfer this case to the United States District Court for the Northern District of California for all further proceedings. After transfer, the clerk shall close the case.

SIGNED this 22nd day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE